## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE IRONWORKERS LOCAL NO. 498 PENSION FUND, THE BOARD OF TRUSTEES OF THE IRONWORKERS LOCAL 498 DEFINED CONTRIBUTION RETIREMENT FUND, and THE BOARD OF TRUSTEES OF THE SHEET METAL WORKERS LOCAL 218S PENSION FUND, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) 04 C 821 |
| NATIONWIDE LIFE INSURANCE COMPANY, NATIONWIDE FINANCIAL SERVICES, INC., NATIONWIDE TRUST COMPANY, FSB, NATIONWIDE FINANCIAL INSTITUTION DISTRIBUTORS AGENCY, INC., and NATIONWIDE INVESTMENT SERVICES CORP., | ) ) Judge Ronald A. Guzmán ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The Board of Trustees of the Ironworkers Local No. 498 Pension Fund ("498 DB Fund"),

the Board of Trustees of the Ironworkers Local No. 498 Defined Contribution Fund ("498 DC

Fund"), and the Board of Trustees of the Sheet Metal Workers Local 218S Pension ("218S

Fund") have sued Nationwide Life Insurance Co. ("NLIC"), Nationwide Financial Services, Inc.

("NFS"), Nationwide Trust Co. ("NTC"), and Nationwide Financial Institution Distributors

Agency, Inc. ("NFIDA") for violation of the Racketeering Influence and Corrupt Organizations

Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and rescission of contracts with NLIC. Before this

Court is Defendants' motion to dismiss the complaint for failure to state a claim upon which

relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). In the alternative, Defendants move to stay the action pending the resolution of related criminal proceedings. For the reasons provided in this Memorandum Opinion and Order, the Court grants in part and denies in part the motion to dismiss and denies the motion to stay.

## FACTS

Plaintiffs had alleged contracts with NLIC to invest money with Defendants. (Compl. ¶ 8.) Plaintiffs allege that Defendants acted to deprive them of money, which should have been invested on their behalf, through a scheme in which Defendants deducted money from fund assets and paid fees, kickbacks, and commissions to third-party administrators, Michael G. Linder, Liz/Mar ("Liz/Mar") and Associates, Inc., and/or Joseph/Anthony and Associates, Inc. ("Joseph/ Anthony"), in return for Linder's recommendation that the Plaintiffs invest their assets with Defendants. (*Id.* ¶ 13.) Plaintiffs also allege that the contracts with the Defendants were entered into without Plaintiffs' knowledge that Linder had an undisclosed broker relationship with Defendants and that the fees which Defendants took from the individual participant accounts were used by Defendants to pay themselves for whatever services they claimed to be performing, with the additional fees used to pay commissions, kickbacks and fees to Linder, Joseph/Anthony, and/or Liz/Mar. (*Id.* ¶¶ 23, 55.) Furthermore, the Funds allege that the signature on the contracts were unauthorized and unauthentic. (*Id.* ¶¶ 30, 62, 76.)

One of the alleged contracts required Defendants to pay commissions to Linder. (*Id.* ¶ 31.) However, the other contracts required Defendants to pay commissions to Joseph/Anthony or Liz/Mar, either of which then passed the funds to Linder. (*Id.* ¶¶ 32, 63.) Defendants, in order to assist Linder in hiding the scheme, agreed to Linder's requests that all documentation

2

regarding his compensation be directed solely to him without any information sent to the Fund Trustees. (*Id.* ¶ 32.) Eventually, the Funds requested an accounting from Linder, which revealed that Linder had collected total fees exceeding the *bona fide* compensation which the Fund Trustees agreed that Linder, Joseph/Anthony, and Liz/Mar were entitled to receive. (*Id.* ¶¶ 33, 45, 65, 68, 79.)

Around November 2001, Plaintiffs decided to terminate the services of Linder, Joseph/Anthony, and Liz/Mar, and hired Zenith Administrators, Inc. ("Zenith") as the new third-party administrator. (*Id.* ¶¶ 36, 66.) Rita Becker, a Zenith employee, contacted Corey Harber, a Nationwide account manager in Columbus, Ohio, to introduce herself as the new administrator of the Funds. (*Id.* ¶ 36.) Harber told Becker that the Funds could not keep its investments with Defendants because Zenith was not a Preferred Pension Administrator, *i.e.*, a third-party administrator with whom the Defendants exclusively conducted business. (*Id.* ¶¶ 37, 66.) Harber directed Becker to another Nationwide employee, Robert Leahy, to discuss Zenith's becoming a Preferred Pension Administrator with Nationwide. (*Id.* ¶ 38.) Leahy further explained to Becker that Defendants expected Preferred Pension Administrators to do a certain volume of business due to the "revenue sharing" that is passed on to the Preferred Pension Administrators. (*Id.* ¶¶ 41, 42.) The Plaintiffs allege that this "revenue sharing" was "merely deductions from the accounts of the [Plaintiffs'] Fund participants that Defendants paid to Linder, Joseph/Anthony and /or Liz/Mar as part of a plan or scheme to secure and ensure Linder's continued recommendation that the Trustees maintain Plaintiffs' investments with Nationwide." (*Id.* ¶ 43.)

Counts I and II of the Complaint allege violations of RICO, specifically 18 U.S.C. § 1962(a) and (c). In Count I, Plaintiffs allege, among other things, that Linder directed Plaintiffs'

3

investments to Defendants, who charged Plaintiffs various fees. (*Id.* ¶¶ 98-99.) From these fees, Defendants paid kickbacks and commissions to Linder, Joseph/Anthony, and Liz/Mar. (*Id.*) In Count II, Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(a) by wrongfully depriving the Plaintiffs of moneys to which they were entitled. (*Id.* ¶ 114.) Plaintiffs contend that this money should have been invested on their behalf, but instead the money was illegally given to Linder, Joseph/Anthony, and Liz/Mar. (*Id.*)

Plaintiffs also ask that their contracts with Defendants be rescinded due to a unilateral mistake of fact and that each party be returned to their status *quo ante*. (*Id.* ¶¶ 116-38.)

## DISCUSSION

### I. Count I: RICO Claim Pursuant to 18 U.S.C. § 1962(c)

The first issue is whether Plaintiffs must plead a violation of 18 U.S.C. § 1962(c) pursuant to Rule 8 or 9(b). To state a claim under 18 U.S.C. § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A pattern of racketeering activity, elements (3) and (4), includes at least two predicate RICO acts committed within a ten-year period. 18 U.S.C. § 1961(5); *see Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998). These predicate racketeering acts are specifically enumerated in 18 U.S.C. § 1961(1) and include unlawful employee pension fund payments, indictable under 18 U.S.C. § 1954, and embezzlement from pension and welfare funds, indictable under 18 U.S.C. § 664, which are the predicate acts alleged in the instant case. *See* 18 U.S.C. § 1961(1).

Defendants argue that Plaintiffs cannot rely on "boilerplate" allegations and must plead with particularity facts that support each element of a RICO claim, citing *Goren v. New Vision*

*International, Inc.*, 156 F.3d at 727. Defendants' reliance on *Goren*, however, is misplaced because the plaintiffs in that case alleged the predicate acts of mail and wire fraud, and therefore the allegations were subject to the heightened pleading requirements of Rule 9(b), rather than the more liberal standards of Rule 8. *See id.* at 729. Thus, *Goren* does not require this Court to apply Rule 9(b)'s pleading standard to predicate acts that do not allege fraud.

Defendants fail to provide, and the Court has not found, any authority to support the contention that RICO complaints alleging predicate acts of embezzlement from pension and welfare funds, *see* 18 U.S.C. § 664, or unlawful employee pension fund payments, *see* 18 U.S.C. § 1954, must meet the heightened pleading standard for fraud under Rule 9(b). In fact, cases decided in this district and elsewhere have declined to apply Rule 9(b) to RICO claims pleading embezzlement under 18 U.S.C. § 664 as a predicate act. *Daniels v. Bursey*, 313 F. Supp. 2d 790, 815 (N.D. Ill. 2004); *Nystrom v. Associated Plastic Fabricators, Inc.*, Nos. 98 C 134, 98 C 4282, 1999 WL 417848, at *9 (N.D. Ill. June 18, 1999); *Am. Tel. & Tel. Co. v. Empire Blue Cross & Blue Shield*, No. Civ. 93-1224, 1994 WL 16057794, at *22 (D.N.J. July 19, 1994). In addition, at least one court has declined to apply Rule 9(b) to a RICO claim alleging unlawful employee pension fund payments under 18 U.S.C. § 1954 as a predicate act. *Nat'l Elec. Benefit Fund v. Heary Bros. Lightning Protection Co.*, 931 F. Supp. 169, 191 (W.D.N.Y. 1995). Finding these cases persuasive, this Court holds that allegations of the predicate acts of embezzlement and unlawful employee pension fund payments do not involve averments of fraud within the meaning of Rule 9(b). Thus, the Court will evaluate Plaintiffs' RICO claims under Rule 8.

Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under this liberal notice pleading standard, "[a] court may dismiss a complaint only if it is clear that no relief

could be granted under any set of facts that could be proved consistent with the allegations."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (internal quotations omitted). Moreover, the court must accept all well-pleaded factual allegations in the light most favorable to the plaintiff. *Colfax Corp. v. Ill. State Toll Highway Auth.*, 79 F.3d 631, 632 (7th Cir. 1996).

### A. Plaintiffs Sufficiently Plead the Existence of an Enterprise and That Defendants Conducted, or Participated in Conducting, the Affairs of the Enterprise.

The term "'enterprise' includes any individual, partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). In addition, an association in fact is a type of enterprise defined by the statute as a "union or group of individuals associated in fact although not a legal entity." *Id.*; *see Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 646 (7th Cir. 1995).

Plaintiffs have alleged two possible enterprises, one consisting of Nationwide Mutual Insurance Co., which was conducted by Defendants as a vehicle for racketeering activity, (Compl. ¶¶ 86, 89), and an association in fact consisting of the named Defendants, Joseph/Anthony, and other unknown third-party administrators, (*id.* ¶ 92). The Court will address each enterprise theory in turn.

RICO plaintiffs must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). "'Person' includes any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). Unless the defendant person and the enterprise are distinct, there can be no violation of RICO. *Baker v. IBP, Inc.*, 357 F.3d 685, 691-92 (7th Cir. 2004) (citing *Sedima*, 473 U.S. at 479). Plaintiffs must allege that the "person" associated with the enterprise conducted or participated,

6

"directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Richmond*, 52 F.3d at 645; 18 U.S.C. § 1962(c). A corporate subsidiary can be deemed the RICO "person" conducting the affairs of its parent, the RICO enterprise. *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997). However, "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)).

Plaintiffs have alleged an enterprise distinct from Defendants themselves, their corporate parent, Nationwide Mutual Insurance Co. (*Id.* ¶ 86.) In addition, Plaintiffs have alleged that the Defendants "directly and/or indirectly conducted and/or participated in the conduct" of the affairs of Nationwide Mutual Insurance Company, the alleged enterprise. (*Id.* ¶ 89.)

On the issue of whether Defendants, as RICO persons, participated in the "operation or management" of Nationwide Mutual Insurance Company, the alleged RICO enterprise, Defendants argue that the complaint fatally alleges that Nationwide Mutual Insurance Co. "transacts . . . business through its subsidiaries," not vice versa. (*Id.* ¶ 87.) The Court does not agree that this allegation is fatal to Plaintiffs' RICO claim. As stated, this Court may dismiss this complaint only if it is clear that no relief could be granted under any conceivable set of facts that could be proved consistent with Plaintiffs' allegations. Plaintiffs' allegations do not preclude them from showing that Nationwide Mutual Insurance Co. transacts business through its subsidiaries, as Plaintiffs allege, and that Defendants also participated in the "operation or management" of the enterprise, as required by *Reves v. Ernst & Young*, 507 U.S. at 179. Accordingly, Plaintiffs have sufficiently alleged that Nationwide Mutual Insurance Co. is an enterprise and that Defendants are RICO persons who have some part in directing its affairs.

7

Turning to the other enterprise theory, Plaintiffs have sufficiently alleged that the association in fact is a RICO enterprise consisting of the named Defendants, Joseph/Anthony, and other unknown third-party administrators. (Compl. ¶¶ 92-93.) A RICO enterprise, including an association in fact, is "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond*, 52 F.3d at 644. "The continuity of an informal enterprise and the differentiation among roles can provide the requisite 'structure' to prove the element of 'enterprise.'" *United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir. 1996). Further, the association in fact must have "a common purpose of engaging in a course of conduct." *Id.* at 645 (citations omitted). Lastly, the defendants must have conducted or participated in the conduct of the enterprise's affairs, not just their own affairs. *Reves*, 507 U.S. at 185.

First, Plaintiffs have alleged facts consistent with an ongoing structure: Defendants' network of Preferred Pension Administrators. (Compl. ¶ 35.) Defendants argue that Plaintiffs' allegation is the type of "nebulous, open-ended description of the enterprise" that the Seventh Circuit rejects. *Richmond*, 52 F.3d at 645. The Court disagrees. Plaintiffs allege that third-party administrators are part of the association in fact, and allege the structure of the association in fact, which was comprised of Defendants and Preferred Pension Administrators, third-party administrators with which Defendants exclusively conducted business such as Joseph/Anthony. (*Id.* ¶¶ 36-42.) Therefore, Plaintiffs allegations of the structure of the association in fact are sufficient.

Second, Plaintiffs have alleged that Defendants, Joseph/Anthony and other unknown third-party administrators shared a common purpose. (*Id.* ¶¶ 36-42.) Specifically, Plaintiffs allege that Defendants have exclusive agreements with several select Preferred Pension

8

Administrators that market and sell the Nationwide products. (*Id.* ¶ 37.) Defendants expect to conduct a certain volume of business with each of these Preferred Pension Administrators due to "revenue sharing" that is passed on to each Preferred Pension Administrator. (*Id.* ¶ 42.) Plaintiffs further allege that this "revenue sharing" was "merely deductions from the accounts of the Fund participants that the Nationwide Defendants paid to Linder, Joseph/Anthony and /or Liz/Mar as part of a plan or scheme to secure and ensure Linder's continued recommendation that the [Fund] Trustees maintain the Fund's investments with Nationwide." (*Id.* ¶ 43.)

Defendants argue that the parties to this business relationship, Defendants and the third-party administrators, do not share the required common purpose because one seeks to earn more and the other seeks to pay less, citing *Baker v. IBP, Inc.*, 357 F.3d at 691-92. In *Baker*, the Seventh Circuit held that there was no common purpose between the defendant company, which sought to hire aliens at lower wages, and the recruiters, who wanted to be paid more by the defendant company for finding aliens for the company to hire. *Id.* The court reasoned that the recruiters wanted to be paid more for services rendered to the defendant company, while the company wanted to pay the recruiters less. *Id.* On the other hand, in the instant case, in the "revenue sharing" scheme alleged by Plaintiffs, both Defendants and the Preferred Pension Administrators benefit because Defendants maintain the Funds' investments while Preferred Pension Administrators receive money deducted from the accounts of Fund participants. Therefore, as pleaded, this mutually beneficial revenue sharing arrangement is a sufficient allegation of a common purpose.

Third, Plaintiffs have alleged that the association in fact is organized in a manner amenable to hierarchical decision-making. (Compl. ¶¶ 36-42.) In particular, Plaintiffs allege that Defendants decided to maintain exclusive agreements with Preferred Pension

9

Administrators while declining to conduct business with third-party administrators who were not Preferred Pension Administrators. (*Id.* ¶ 37.) Joseph/Anthony, a Preferred Pension Administrator, was aware of this arrangement. (*Id.* ¶ 38.) On the basis of these allegations, Defendants decided that they would only deal with Preferred Pension Administrators and the Plaintiffs, in order to continue dealing with the Defendants, effectively had no choice but to agree to utilize a Preferred Pension Administrator. As pleaded, this means of decision-making within the association in fact sufficiently alleges a hierarchical decision-making structure.

Finally, Plaintiffs have adequately alleged that the Defendants conducted, or participated in conducting, the affairs of the association in fact. (*Id.* ¶ 96.) Specifically, Defendants, through the association in fact, entered into contracts with various pension and welfare funds that were directed to Defendants by third-party administrators, like Joseph Anthony. (*Id.*) In order to entice third-party administrators to direct funds to Defendants, the fees which Defendants took from the individual participant accounts were used by Defendants to pay themselves for whatever services they claimed to be performing, with the additional fees used to pay commissions, kickbacks and fees to third-party administrators, like Linder, Joseph/Anthony, and/or Liz/Mar. (*Id.* ¶¶ 23, 55.) Moreover, paragraphs 36-43 of the complaint specifically allege that Defendants conducted, or participated in conducting, the affairs of the association in fact by limiting who could become part of the association in fact as a Preferred Pension Administrator, and on what terms, as well as limiting who would have access to the association in fact's services. Therefore, taking Plaintiffs' well-pleaded allegations in the light most favorable to Plaintiffs, they have adequately alleged an association in fact.

10

## B. Plaintiffs Sufficiently Allege the Predicate Acts

Plaintiffs have sufficiently alleged the predicate acts required by RICO. (Compl. ¶¶ 99-108.) A pattern of racketeering activity, as required under 18 U.S.C. § 1962(c), includes at least two predicate RICO acts committed within a ten-year period. 18 U.S.C. § 1961(5). Plaintiffs allege that Defendants violated both 18 U.S.C. § 1954 and 18 U.S.C. § 664. *See* 18 U.S.C. § 1961(1).

### 1. Plaintiffs Sufficiently Allege That Defendants Violated 18 U.S.C. § 1954

Plaintiffs have sufficiently pleaded that Defendants violated 18 U.S.C. § 1954. (Compl. ¶¶ 106-08.) Section 1954 precludes both receiving and giving "any fee, kickback, commission, gift, loan, money or thing of value" to individuals with the ability, or apparent ability, to influence the operation of employee benefit plans. 18 U.S.C. § 1954. However, 18 U.S.C. § 1954 is not violated by the payment of a "*bona fide* salary, compensation, or other payments made for goods or facilities actually furnished or for services actually performed in the regular course of his duties." *Id.*

Defendants argue that the payments admittedly made to Linder were *bona fide*, and therefore legal, because they either were disclosed or should have been disclosed by Linder. Failure to disclose a payment precludes a finding that it was *bona fide* under section 1954. *United States v. Schwimmer*, 700 F. Supp. 104, 107 (E.D.N.Y. 1988). However, Plaintiffs alleged that the commissions and fees were in fact not disclosed. (*Id.* ¶¶ 28, 33, 60, 65, 74.) Moreover, Plaintiffs' allegations in paragraphs 31 and 32 suggest that the Defendants actively participated in the non-disclosure of commissions and fees. In particular, Plaintiffs alleged that Defendants, at Linder's request, paid commissions to Liz/Mar, a sham corporation used by

Linder to assist in the scheme to hide the commissions. (*Id.* ¶ 31.) Plaintiffs also allege that Defendants, in order to assist Linder in hiding the scheme, agreed to Linder's requests that all documentation regarding his compensation be directed solely to his attention and be marked personal and confidential. (*Id.* ¶ 32.) Furthermore, Plaintiffs have made numerous allegations that the payments made to Linder by the Defendants were for unlawful purposes. (*Id.* ¶¶ 14, 44, 45, 67, 68, 81-82, 103.) Also, for one of the Funds, Plaintiffs allege that the Defendants were told in advance that any contract must be "net of commissions." (*Id.* ¶ 20.)  Once again, viewing these allegations in the light most favorable to the Plaintiffs, they have sufficiently pleaded that Defendants violated 18 U.S.C. § 1954.

### 2. Plaintiffs Sufficiently Allege That Defendants Violated 18 U.S.C. § 664

Plaintiffs have also sufficiently alleged that Defendants violated 18 U.S.C. § 664. Section 664 penalizes "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith." 18 U.S.C. § 664. Plaintiffs have alleged that Defendants "violated 18 U.S.C. § 664 by unlawfully and willfully converting moneys owned by the Funds, retaining some of that money, and paying the rest of it to Linder, Joseph/Anthony and/or Liz/Mar, in the form of unauthorized brokerage commissions and other commissions, like [Preferred Pension Administrator] fees. (Compl. ¶ 108.) Therefore, taking this allegation in the light most favorable to the Plaintiffs, they have adequately alleged a section 664 violation.

12

## II. Count II: RICO Claim Pursuant to 18 U.S.C. § 1962(a)

In *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, the Seventh Circuit noted that in order to state a claim under 18 U.S.C. § 1962(a), "the majority of circuits hold that the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicated racketeering acts is inadequate." 20 F.3d 771, 779 (7th Cir. 1994). "Since *Vicom*, 'each court in this district addressing the issue has adopted the majority use or investment rule.'" *Carnegie v. Household Int'l, Inc.*, 220 F.R.D. 542, 546 (N.D. Ill. 2004) (quoting *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 965 (N.D. Ill. 2002)).

Plaintiffs merely allege that they were injured under 18 U.S.C. § 1962(a) in the same way that they were injured under 18 U.S.C. § 1962(c): "the Funds and their participants were wrongly deprived of moneys by the Nationwide Defendants." (Compl. ¶¶ 98, 114.) Plaintiffs concede that their injury was not caused by the use or investment of the alleged racketeering income, but instead by the racketeering acts themselves, and therefore Plaintiffs ask this Court to adopt the minority position. This Court declines to follow the minority position and adheres to the majority position because it is in keeping with the plain meaning of the statute's language: "Any person injured in his business or property *by reason of* a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c) (emphasis added). Due to the "by reason of" language, in order to state a claim under 18 U.S.C. § 1962(a), a plaintiff must allege "proximate causation between the § 1962(a) violation and plaintiffs' injury." *Heritage Ins. Co. of Am. v. First Nat'l Bank of Cicero*, 629 F. Supp. 1412, 1417 (N.D. Ill. 1986). Plaintiffs fail to allege, or even argue, that the use or investment of the racketeering income proximately caused their injury, and thus, they lack standing to bring a

13

claim pursuant to 18 U.S.C. § 1962(a) under the majority rule. Accordingly, the Court grants Defendants' motion to dismiss as to Count II.

### III. Counts III-V: Rescission

Defendants argue that Counts III through V must be dismissed because Plaintiffs have failed to state claims for rescission of their contracts with NLIC. The Court disagrees.

"There are three conditions necessary before a contract will be rescinded for a mistake by one of the parties." *John J. Calnan Co. v. Talsma Builders, Inc.*, 367 N.E.2d 695, 698 (Ill. 1977). "First, the mistake must relate to a material feature of the contract; second, it must have occurred despite the exercise of reasonable care; and third, the other party must be placed *in statu quo.*" *Id.*

First, the parties do not appear to dispute that the purported mistake relates to a material feature of the contract. Second, Plaintiffs have adequately pleaded that the mistake was not a result of the Plaintiffs' lack of due care. Defendants argue that Plaintiffs never inspected the contract with NLIC, instead relying on representations made by Linder regarding the contract terms. However, Plaintiffs have alleged that NLIC willfully concealed those contract terms. (Compl. ¶¶ 120, 121, 122, 123, 129, 130, 131, 135, 137.) In particular, NLIC willfully concealed that Plaintiffs' contracts with NLIC required commissions to be paid to Linder, Liz/Mar, and/or Joseph Anthony out of Fund and participant moneys. (*Id.* ¶ 121.) Furthermore, NLIC assisted Linder in concealing reports from Plaintiffs by agreeing to communicate only with Linder regarding the Fund investments. (*Id.* ¶ 122.) Given Plaintiffs' allegations of willful concealment of the contract terms by NLIC, they have sufficiently alleged that the mistake was not a result of the Plaintiffs' lack of due care.

Third, Plaintiffs have sufficiently pleaded that each party can be put in its *status quo ante*. Defendants argue that the money that Plaintiffs seek to recover is in Linder's hands and because Linder is not a party in this case, the parties cannot be restored to their original positions. The Court finds the Defendants' reliance on *Brzozowski v. Northern Trust Co.*, 618 N.E.2d 405, 409-10 (Ill. App. Ct. 1993), is misplaced. In *Brzozowski*, where the plaintiff guarantor sought rescission of a guaranty agreement by which plaintiff guaranteed the indebtedness of Nicholas Ahrens to defendant. *Id.* at 407. The appellate court affirmed the trial court's ruling that rescission was improper in part because defendant could not be put in its *status quo ante* because defendant could not get the loaned money back from Ahrens, which is why it enforced the guaranty. *Id.*

*Brzozowiski* is distinguishable from the instant case. First, the plaintiff in *Brzozowiski* was denied rescission after a bench trial whereas the instant case is merely at the motion to dismiss stage. Second, Plaintiffs allege that NLIC paid the commissions and fees to Linder after deducting the money from the Funds' assets. (Compl. ¶¶ 13, 14, 108). In essence, Plaintiffs allege that NLIC had the Funds' money but then gave it to Linder in the form of fees, kickbacks, and commissions. Accordingly, as alleged, it is possible that each party may be put in the *status quo ante*. Therefore, the Court denies Defendants' motion to dismiss as to Counts III-V.


**IV. Motion to Stay**

With regard to the issuance of a stay, "a district court possesses substantial discretion to control its docket." *Employers Ins. of Wausau v. Shell Oil Co.*, 820 F.2d 898, 902 (7th Cir. 1987). "[T]he granting of a stay is the exception, not the rule, and the party seeking the stay has

the burden of demonstrating it is necessary." *RLJCS Enters., Inc. v. Prof'l Benefit Trust, Inc.*,

No. 03 C 6080, 2004 WL 2033067, at \*2 (N.D. Ill. Sept. 2, 2004).

"While the Court has the inherent power to stay its proceedings, the Constitution does not

require a stay of civil proceedings pending the outcome of criminal proceedings." *Jones v. City*

*of Indianapolis*, 216 F.R.D. 440, 450 (S.D. Ind. 2003). A court may consider the following

factors in determining whether to stay civil proceedings where a similar criminal action is

brought before the completion of the civil proceedings:

> (1) whether the two actions involve the same subject matter; (2) whether the two
> actions are brought by the government; (3) the posture of the criminal proceeding;
> (4) the effect on the public interests at stake if a stay were to be issued; (5) the
> interest of the plaintiffs in proceeding expeditiously with this litigation and the
> potential prejudice to plaintiffs of a delay; and (6) the burden that any particular
> aspect of the proceedings may impose on defendants.

*Cruz v. County of DuPage*, No. 96 C 7170, 1997 WL 370194, at \*2 (N.D. Ill. June 27, 1997).

Defendants do not supply, and the Court does not find, any authority addressing the

precise situation in the instant case, *i.e.*, where parties in a civil proceeding, who are not facing

criminal prosecution, seek a stay because individuals who are not parties to the civil proceeding

may assert their Fifth Amendment right against self-incrimination in pending criminal

proceedings against those individuals. Instead, Defendants primarily rely on the six factors

discussed in *Cruz v. County of DuPage*, 1997 WL 370194, at \*2.

In *Cruz*, the issue was whether the court should stay the civil proceedings to avoid

placing the defendants in the civil case, who had been indicted for conduct arising from the same

circumstances that led to civil suits against them, in the position of having to choose between

risking a loss in the civil proceedings by invoking their Fifth Amendment rights or risking

16

conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings. *Id.* at *3-4.

However, *Cruz* is distinguishable for two reasons. In the present case, Defendants who are seeking a stay have not been indicted and there is no indication that they will be indicted. Rather the indictments are against three non-parties to this case, Linder, Thomas Kisting, and Fred Schreier. Moreover, each of the Defendants is a corporation and "a corporation has no Fifth Amendment privilege," *see Braswell v. United States*, 487 U.S. 99, 105 (1998).

Out of an abundance of caution, however, the Court will nevertheless consider the general guidelines to determine whether a stay is warranted. The Court addresses each factor in turn.

## A. Whether the Two Actions Involve the Same Subject Matter

Although there are some common allegations between the criminal indictment and Plaintiffs' Complaint, there is not a sufficient overlap of issues to support an entry of a stay in the instant case. The current indictments of Linder, Kisting and Schreier concern specific conduct involving one-time gifts of motorcycles that Linder allegedly gave to Kisting and Schreier. On the other hand, the present case involves an alleged pattern of ongoing conduct in which Defendants paid Linder at least $1.5 million from 1997 to 2001. (Compl. ¶¶ 101-12.) Therefore, this factor weighs against granting a stay.

## B. Whether the Actions Are Brought by the Government

Defendants concede that this factor does not weigh in favor of a stay because the government is not a party to the instant case. As such, there is no danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, thereby circumventing the Fifth Amendment right against self-incrimination. *See Cruz,* 1997 WL 370194, at *3. Therefore, this factor weighs against the issuance of a stay.

### C. The Posture of the Criminal Proceeding

Defendants state that courts generally require that an indictment be issued before granting a stay. *United States v. All Meat & Poultry Prods.,* No. 02 C 5145, 2003 WL 22284318, at *2 (N.D. Ill. Oct. 3, 2003). However, in *All Meat & Poultry,* the criminal indictments were against the civil defendants themselves. *Id.* at *1. On the other hand, in the present case, as stated above, Defendants have not been indicted, and there is no indication that they will be. Although the criminal proceedings are ongoing against Linder, Kisting, and Schreier, who are not parties to the civil proceedings, that fact still does not weigh in favor of a stay.

### D. The Effect on the Public Interests at Stake If a Stay Was to Be Issued

Defendants have not articulated how the public interest would be served by granting a stay. Defendants state that Linder, Joseph/Anthony and Liz/Mar no longer serve as third-party administrators for Plaintiffs and there is no threat that they could "engage in continuing wrong." *Cruz,* 1997 WL 370194, at *3. That may be true, but Defendants have not argued why this fact weighs in favor of a stay. Furthermore, Defendants opine that the stay would allow the Departments of Labor and Justice to proceed without interference by civil litigants. However,

Defendants have not given any indication how the present case interferes with the government's case against Linder. Accordingly, this factor does not weigh in favor of a stay.

### E. The Interest of Plaintiffs in Proceeding Expeditiously with this Litigation and the Potential Prejudice to Plaintiffs of the Delay

Defendants have not demonstrated that Plaintiffs do not have an interest in prompt litigation of its claims or would not be prejudiced by the delay. Defendants argue that Plaintiffs have not pursued their claims with urgency. On the other hand, as Plaintiffs have correctly pointed out, they have brought their claims within the statutory period. Accordingly, the Court does not find Defendants' argument persuasive in establishing that Plaintiffs will not be prejudiced by a delay.

Defendants also argue that the fact that the 218(D) Fund, a separate and distinct fund from the 218(S) Plaintiff Fund, agreed to stay its arbitration claim against Linder weighs in favor of staying the present case. The Court does not find this fact relevant to the current inquiry because the 218(D) Fund is not a party to this case. Furthermore, counsel for the 218(D) Fund agreed to stay the arbitration with Linder, Joseph/Anthony, and Liz/Mar in exchange for assurances from Linder's counsel. Specifically, Linder Joseph/Anthony, and Liz/Mar agreed to assign to the 218(S) Fund any amounts that Defendants owed to Linder Joseph/Anthony, and Liz/Mar related to work involving the 218(S) Fund. In contrast, no such assurances have been made in the present case. Therefore, this factor weighs against granting a stay.

### F. The burden that any particular aspect of the proceedings may impose on Defendants

Defendants have not established that they will be burdened in the absence of a stay. Defendants argue that the potential impact of the criminal proceedings on the ability of the defendants to conduct discovery and defend themselves weighs in favor of a stay. Defendants further speculate that Linder and Kisting will certainly assert their Fifth Amendment rights to avoid complying with discovery requests.

Defendants rely on *Bruner Corp. v. Balogh*, 819 F. Supp. 811, 816 (E.D. Wis. 1993), and *United States v. All Meat & Poultry Prods.*, 2003 WL 22284318, at *2, for the proposition that a civil action should be stayed where a civil defendant would not be able to conduct essential discovery because other parties had invoked their Fifth Amendment rights. In these cases, however, the civil defendant was seeking a stay because other civil defendants were invoking their Fifth Amendment rights, as opposed to the present case in which Defendants seek the stay because a non-party, Linder, may invoke his Fifth Amendment right. Therefore, the Court does not find Defendants' reasoning persuasive.

Furthermore, mere speculation as to whether Linder and Kisting will invoke their Fifth Amendment rights in the present case is not a sufficient basis for the issuance of a stay. In this vein, the Court has considered whether Defendants could eventually be burdened by an adverse inference against them if non-parties, Linder and Kisting, invoke their Fifth Amendment rights as witnesses in this case. In order to impute a third-party's Fifth Amendment invocation to another party, the party seeking to use the invocation must establish some relationship of loyalty between the other two parties. *State Farm Mut. Auto. Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (citing *LiButti v. United States*, 107 F.3d 110, 122 (2d Cir. 1997)). At this point, it is far too speculative to determine whether Plaintiffs could establish loyalty between Linder and/or Kisting and Defendants such that Linder and/or

20

Kisting's invocation of the Fifth Amendment in this case would lead to an inference against Defendants. Furthermore, it is sheer speculation as to whether Linder or Kisting would ever waive his Fifth Amendment right in this case, even after his criminal proceeding has concluded. Thus, it is possible that even if the Court were to issue a stay in this case, the Court would have needlessly delayed this action waiting for testimony that may never be given. Accordingly, the potential of a possible burden on the Defendants is much too speculative at this point and does not weigh in favor of a stay.

Having considered the parties' arguments and the six general guidelines set forth in *Cruz*, the Court holds that Defendants have failed to satisfy their burden of demonstrating that a stay is necessary in this case. The Court thus denies the motion for a stay.

**CONCLUSION**

For the foregoing reasons, the Court: (1) grants Nationwide Life Insurance Co., Nationwide Financial Services, Inc., Nationwide Trust Co., and Nationwide Financial Institution Distributors Agency, Inc.'s motion to dismiss as to Count II; (2) denies the motion to dismiss as to Counts I, III, IV, and V; and denies the motion to stay the case [doc. nos. 16-1, 16-2].

**SO ORDERED**                           **ENTERED:** MAR 2 8 2005

**HON. RONALD A. GUZMAN**
**United States Judge**

21